## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CLEARVIEW IMAGING, LLC d/b/a
CLEARVIEW OPEN MRI,

                                  CASE NO.: 8:19-cv-1299-MSS-CPT

      Plaintiff,

v.

PROGRESSIVE AMERICAN
INSURANCE COMPANY,

      Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS
### THE FIRST AMENDED COMPLAINT (ECF No. 19)

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Progressive American Ins. Co. ("Progressive") hereby moves to dismiss the Amended Class Action Complaint (ECF No. 19) of Plaintiff Clearview Imaging, LLC ("Clearview").

### MEMORANDUM OF LAW

### I.    Concise Statement of the Relief Requested

Progressive seeks the dismissal of this meritless action in its entirety and with prejudice. By this lawsuit, Clearview (a provider of magnetic resonance imaging ("MRI") services) seeks to inflate the amount paid by its patients as co-payments for medical bills. While Clearview concedes that Progressive is entitled to adjust the billed amount of Clearview's charges on the 80% of bills covered by the patients' auto insurance policies based on the schedule of maximum charges in the Florida No-Fault ("PIP") Statute, Fla. Stat. § 627.736(5)(a)1., it argues that its patients are not entitled to a similar adjustment on the remaining 20% of the bill attributable to their co-payments. Clearview asserts this illogical

theory on behalf of itself and other medical providers on a class action basis – seeking license to overcharge patients for insurance co-payments class-wide.

This suit is groundless on several levels. First, Clearview improperly attempts to sue Progressive for the inflated co-payment amounts. Such co-payments are not covered under the patients' Progressive auto policies -- so any attempt to address those extra-contractual payments must be directed at the patients (and not Progressive). Alternatively, the patients are necessary parties to any litigation over their co-payments. Third, Clearview's theory as to why it may recover the co-payments from Progressive is inconsistent with the language of the applicable policies, the Florida PIP Statute, precedent, and basic common sense. Beyond these fundamental flaws, Clearview fails to allege compliance with the PIP Statute's demand requirement (Fla. Stat. § 627.736(10)), urges the Court to consider improper splitting of claims in violation of Fla. Stat. § 627.736(15), and improperly seeks declaratory and injunctive relief when an available remedy at law (damages) is otherwise available.

Florida Statute Stat. § 817.234(7)(a) (False and Fraudulent Insurance Claims) makes it incumbent on medical providers like Clearview to collect co-payments from patients:

> It shall constitute a material omission and insurance fraud, punishable as provided in subsection (11), for any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge. . . .

Clearview makes no allegation that it has attempted to collect reasonable co-payments from its patients for the bills at issue. It appears that Clearview seeks to avoid this requirement by attempting to justify both the inflation of such co-payment amounts and their recovery from

the patients' insurer instead of the patients themselves.  This incongruous theory must be rejected; and the Amended Complaint should be dismissed in its entirety.

## II.   <u>Background</u>

This Action arises out of MRIs performed by Clearview on three different patients insured under auto policies issued by Progressive (ECF No. 19 at ¶¶ 28-30, 36-38, 44-46):

| Patient/Insured | DSN | YGM | YCA |
| --- | --- | --- | --- |
| Accident Date | 8/27/18 | 8/15/18 | 7/14/18 |
| Applicable Policy Form | 2017 Policy Form (9611A FL (07/17)) | 2013 Policy Form (9611A FL (07/13)) | 2013 Policy Form[1] (9611A FL (07/13)) |
| Date MRI Services Rendered by Clearview | 9/24/18 | 11/8/18 | 8/17/18 |

This dispute regarding payment for those MRIs arises under the PIP Statute, Fla. Stat. § 627.736 (2018) and the patients' Progressive policies. Clearview itself is not a Progressive insured, but it alleges standing based on an assignments of benefits from DSN, YGM, and YCA (the "Patients"). (ECF No. 19 at ¶¶ 31, 39, 47 and Exs. C, E, and G).

### A.    <u>The Florida No-Fault ("PIP") Statute, Fla. Stat. § 627.736 (2018)</u>

PIP coverage must cover: "[e]ighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services ...." The remaining 20%

---

[1]    Clearview references only the patients' initials; Progressive will do the same. Clearview erroneously alleges that YCA is insured under the 2017 policy form; when the YCA policy implicates the 2013 form.  Notably, the policy documents attached to the Complaint are *not* the Patients' actual policies. The DSN, YGM, and YCA policies, in effect as of the dates of loss, are attached as **Exhibits 1-3** respectively. These may be considered on a motion to dismiss. *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015); *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *Blue Supply Corp. v. Novos Electro Mech., Inc.*, 990 So. 2d 1157, 1159 (Fla. 3d DCA 2008).

49430645;1

is charged to an insured as a co-payment.[2] *See Nationwide Mut. Ins. Co. v. Jewell*, 862 So. 2d 79, 86 (Fla. 2d DCA 2003); *see also* Fla. Stat. § 627.736(1)(a) (2012 to date). The PIP statute provides additional guidance as to medical charges (emphasis added):

> (5) CHARGES FOR TREATMENT OF INJURED PERSONS.—
> (a) A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance **may**
>  **charge the insurer and injured party only a reasonable amount** pursuant to this section for the services and supplies rendered, and the insurer providing such coverage . . . . However, such a charge may not exceed the amount the person or institution customarily charges for like services or supplies. In determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

Subsection (5)(a)1. provides that an insurer may choose to limit reimbursement to 80% of a "schedule of maximum charges" set forth in the Statute (the "Schedule") (emphasis added):

> 1.   The insurer may limit reimbursement to 80 percent of the following **schedule of maximum charges:**[3]
> * * *
> f.   For all other medical services, supplies, and care, 200 percent of the allowable amount under:

---

[2]   Co-payments may be covered by optional Medical Payments ("Medpay") coverage if a patient has purchased such coverage. *See State Farm Mut. Auto. Ins. Co. v. Pressley*, 28 So. 3d 105, 109 & n.3 (Fla. 1st DCA 2010) ("[MedPay] benefits are essentially excess coverage that is not implicated until PIP benefits are paid and exhausted."). *See also MRI Scan Ctr., Inc. v. Allstate Ins. Co.*, 2007 WL 2288149, at *2 (S.D. Fla. 2007), *aff'd*, 273 F. App'x 835 (11th Cir. 2008) (Medpay benefits pay the full remaining balance of a medical bill after PIP pays its capped rate).

[3]   The Schedule contains additional subsections (a)-(e) which set forth maximum reimbursement amounts for other categories of services. Subsection (f) applies to the MRI addressed here. A full copy of the PIP Statute is attached as **Exhibit 4**.

        (I)   The participating physicians fee schedule of Medicare Part B. . . .[4]

Subsection (5)(a)4. provides:

> If an insurer limits payment as authorized by subparagraph 1. [the Schedule], the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits.

## B.      The Progressive Policies

All three Patient policies provide PIP coverage for 80% of reasonable expenses for

medically necessary services:

**INSURING AGREEMENT**
If **you** pay the premium for this coverage, **we** will pay benefits that an **insured person** is entitled to receive pursuant to the Florida Motor Vehicle No-Fault Law, as amended, because of **bodily injury**:
1. caused by an **accident**;
2. sustained by an **insured person**; and
3. arising out of the ownership, maintenance or use of a **motor vehicle**.

Personal Injury Protection Coverage benefits consist of:
1. **medical benefits**;
\*\*\*

---

[4]      Subsection (5)(a)2. provides guidance as to how to apply the Medicare Part B schedule referenced in Subsection (5)(a)1.f.:

> 2.   For purposes of subparagraph 1., the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the service year in which the services, supplies, or care is rendered and for the area in which such services, supplies, or care is rendered, and the applicable fee schedule or payment limitation applies to services, supplies, or care rendered during that service year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B. For purposes of this subparagraph, the term "service year" means the period from March 1 through the end of February of the following year.

49430645;1

5. "**Medical benefits**" means 80% of all reasonable expenses incurred for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services…

(Ex. 1, Form 9611A FL (07/17) at 8-9;  Exs. 2-3, Form 9611FL (07/13) at 7-8). This is subject to conditions, including the limitation of reimbursement based on the Schedule in the PIP Statute (Ex. 1 at 13-14; Exs. 2-3 at 12-13):

> **Unreasonable or Unnecessary Medical Benefits.** If an **insured person** incurs **medical benefits** that **we** deem to be unreasonable or unnecessary, **we** may refuse to pay for those **medical benefits** and contest them.

> **We** will determine to be unreasonable any charges incurred that exceed the maximum charges set forth in Section 627.736 (5)(a)(1) (a through f)[5] of the Florida Motor Vehicle No-Fault Law, as amended. Pursuant to Florida law, **we** will limit reimbursement to a maximum of, and pay an amount not to exceed 80 percent of the following schedule of maximum charges:
> * * *
> f. for all other medical services, supplies and care, 200 percent of the allowable amount under the participating physicians fee schedule of Medicare Part B. . . .[6]

Both policies also include certain language for the protection of Progressive's insureds:

> **We** will reduce any payment to a medical provider under this Part II(A) by any amounts **we** deem to be unreasonable **medical benefits**. However, the **medical benefits** shall provide reimbursement only for such services, supplies and care that are lawfully rendered, supervised, ordered or prescribed. Any reductions taken will not affect the rights of an **insured person** for coverage under this Part II(A). Whenever a medical provider agrees to a reduction of **medical benefits** charged, any co-payment owed by an **insured person** will also be reduced.
> * * *

---

[5]     There is a difference in the 2013 Policy Form (9611FL (07/13)) language – which refers instead to  § 627.726(5)(a)2.(a through f).  That is where the Schedule of maximum changes resided in the prior versions of the PIP Statute. (ECF No. 19 at ¶ 17).

[6]     Like the PIP Statute, the policy excerpts all the provisions of the Schedule, but (f) is the only one that applies to the MRI implicated here. The policy also incorporates the language of Fla. Stat. § 627.736(5)(a)2. regarding the how to apply the Medicare schedule referenced in (f). *Id.* at 13-14.

> The **insured person** shall not be responsible for payment of any reductions applied by **us**. If a medical provider disputes an amount paid by **us**, **we** will be responsible for resolving such dispute. If a lawsuit is initiated against an **insured person** as a result of the reduction of a medical bill by **us**, other than reductions taken pursuant to FL St. 627.736 (5)(a)(1) (a through f), **we** will provide the **insured person** with a legal defense by counsel of **our** choice, and pay any resulting judgment. . . .

(Ex. 1 at 14-15; Exs. 2-3 at 14).

## C.   <u>The Dispute Between Clearview and Progressive (and the Patients)</u>

As set forth on the Explanations of Benefits ("EOBs"), Clearview billed Progressive for MRIs performed on the Patients (ECF No. 19 at Exs. D, F and H). Progressive adjusted the amounts billed (the "Billed Amounts") based on the application of the Schedule, Fla. Stat. § 627.736(5)(a)1.f.. The resulting amounts (the "Allowed Amounts") are explained as follows:

> 432 – The allowed amount for this procedure is based on upon 200% of the 2007 Participating Level of Medicare physician fee schedule for region in which the services were rendered, which is higher than the current fee established for the date of service, pursuant to Fla. Stat. 627.736(5).[7]

(ECF No. 19 at Exs. D, F and H). The adjustments are consistent with the reimbursement limits in the Schedule, Fla. Stat. § 627.736(5)(a)1.f., and the policies. Progressive paid 80% of the Allowed Amounts.

While Clearview does not dispute that Progressive was permitted to adjust its own policy payments to 80% of the Allowed Amounts (based on the application of the Schedule) (ECF No. 19 at ¶ 22), it challenges the application of the Schedule to the Patients' 20% *co-*

---

[7]   Progressive limited reimbursement for the MRI based on Subsection (5)(a)1.f. of the PIP Statute (200% of Medicare Part B). Because the 2007 Medicare Part B schedule provided a higher amount than the 2018 Medicare schedule, Progressive applied the 2007 schedule pursuant to the policy and Subsection (5)(a)2. of the PIP Statute. Fla. Stat. § 5(a)2. (2012 to date); Ex. 1 at 14; Exs. 2-3 at 13).

49430645;1

*payments*. (*Id.* at ¶¶ 22-25). Rather than a 20% co-payment based on the Allowed Amounts (applying the Schedule), Clearview appears to allege that the Patients should be responsible for 20% of the full Billed Amounts. The following table demonstrates the payment dispute:

| Patient/Insured | DSN | YGM | YCA |
|---|---|---|---|
| Billed Amount for MRI (by Clearview) | $1,372.03 | $1,357.64 | $1,257.99 |
| Allowed Amount for MRI (based on Progressive's application of the Schedule) | $1,076.74 | $1,066.28 | $1,006.02 |
| 80% of the Allowed Amount (the amount paid by Progressive) | $861.39 | $853.02 | $809.16 |
| **20% of the Billed Amount** | **$274.41** | **$271.53** | **$251.60** |
| **20% of the Allowed Amount** | **$215.35** | **$213.26** | **$201.20** |
| **Difference sought by Clearview** (20% of Billed Amount minus 20% of Allowed Amount) | **$59.06** | **$58.27** | **$50.40** |

Clearview alleges that the Patients should be responsible for higher co-payments based on the Billed Amounts; instead of lesser co-payments based on the application of the Schedule. For the Patients, this would result in a co-payment $50-59 more expensive than a co-payment based on the Allowed Amounts. (ECF No. 19 at ¶¶ 35, 43, 51).

Clearview's theory that the Schedule may not be applied to an insured's co-payment is inconsistent with the PIP Statute, the legislative history of the Statute, the Progressive policies, case law, and common sense. Based on its flawed theory, Clearview brings claims for declaratory relief, injunctive relief, and breach of contract on behalf of a class defined as:

All persons and/or entities who:

(a) are health care providers operating in the State of Florida;

(b) issued a medical bill for health care services provided to a patient who had PIP coverage under the Insurance Policy issued by the Insurance Company during the 5-year time period prior to the filing of this lawsuit;

(c) own an assignment of benefits from said insured patient for insurance benefits associated with the medical bill; and

(d) received an "Explanation of Reimbursement" form from the Insurance Company which purported to extend the Fee Schedule Method reductions to the portion of the medical bill that applies to the insured patient's 20% coinsurance or co-payment . . .

(ECF No. 19 at ¶ 55).[8]   There are two proposed sub-classes: one for claims covered by the "2013 Insurance Policy" and one for the claims covered by the "2017 Insurance Policy."   (*Id.* at ¶¶ 56-57).

**D.      The Legislative Background**

Medical provider abuse of Florida PIP coverage is well-documented. Report on Fla. Motor Vehicle No-Fault Ins. (Personal Injury Protection), Office of the Ins. Consumer Advocate[9] at 2 (Dec. 2011) ("Despite repeated efforts by the Legislature in recent years to implement Personal Injury Protection (PIP) reforms and anti-fraud measures, the level of over-utilization in certain medical procedures, manipulation of the claims process and fraudulent activity in the system has surpassed unprecedented levels and is rapidly becoming pervasive in many areas of our state.").

The Schedule in Section 627.736(5)(a)1. – that allows insurers to limit reimbursement based on **twice** the amount payable by Medicare for most services (including Clearview's MRI

---

[8]      The class definition excludes coinsurance or co-payment claims which: (a) have already been fully paid by the insured or Progressive, or were otherwise satisfied through litigation or settlement or release; (b) were denied or reduced for any reason other than Progressive's purported application of the Schedule to the portion of the medical bill that applies to the insured patient's 20% coinsurance or co-payment; (c) are barred by operation of Fla. Stat. §627.736(15); and/or (c) are the subject of pending litigation against the insured patient or Progressive. (ECF No. 19 at ¶ 55).

[9]      Available at: https://www.myfloridacfo.com/division/ICA/docs/PIP_Working_Group_Report 12.14.2011.pdf; *see also* Pinnacle Actuarial Resources, Impact Analysis of HB 119, at 5-7 (Aug. 20, 2012): https://www.floir.com/siteDocuments/HB119ImpactAnalystFINAL08202012.pdf.

here) – was intended to *resolve* billing disputes. *Id.* ("The implementation of the fee schedule which was intended to resolve billing disputes and litigation has instead become the dominant issue associated with litigation. This has led to a significant increase in PIP premiums, which translates into a 'fraud tax' of nearly $1 billion on Floridians.").

The 2012 amendments to the PIP Statute were intended to combat fraud and billing abuses, reduce escalating medical costs, conserve benefits for emergencies, and reduce premiums.[10] As set forth in the Final Bill Analysis:

- The number of PIP claims opened or recorded in 2010 increased by 28% since 2006;

- From 2006-2010, insurers paid $8.7 billion for PIP claims and the number of PIP lawsuits in which the insurer was the defendant increased by 387%;

- From 2008-2010, PIP benefits paid by insurers increased by 70%;

- Based on trends, a 19% increase in PIP claims paid, a 9% increase in claim severity, and a 29% increase in pure premium can be expected; and

- Florida exceeds the national average for number of health care provider charges per PIP claim and the average number of procedures per claim.

(Exs. 5-6 at 6) (citing Office of Insurance Regulation ("OIR") "Report on Review of the 2011 Personal Injury Protection Data Call"). There is recognition of escalating medical costs like those at issue here as a driver for the changes in the Statute.

---

[10]     *See*, *e.g.*, CS/CS/H.B. 119, H.R., Final Bill Analysis (May 7, 2012) (**Exhibit 5**); CS/CS/H.B. 119, H.R., Final Bill Analysis (Mar. 19, 2012) (attached as **Exhibit 6**); CS/CS/H.B. 119, H.R. Message Summary (Mar. 9, 2012) (**Exhibit 7**); CS/CS/H.B. 119, H.R. Staff Analysis (Feb. 27, 2012) (**Exhibit 8**); CS/CS/H.B. 119, H.R. Staff Analysis (Jan. 25, 2012) (**Exhibit 9**). Ch. 2012-197, Laws of Fla. The Court may consider these in connection with this motion to dismiss. *See*, *e.g.*, *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 587-88 (11th Cir. 2015) (in affirming dismissal of class actions against two insurers; the court considered the same legislative history); *Enivert v. Progressive Select Ins. Co.*, 62 F. Supp. 3d 1352, 1355 (S.D. Fla. 2014) (considering same legislative history); *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 62 F. Supp. 3d 1349, 1351-52 (S.D. Fla. 2014) (same).

## Argument

### I.    Clearview Cannot Sue Progressive Over the Patients' Co-Payments

#### A.    The Patients' Co-Payments Are Not Covered by the Policies

The interpretation of an insurance contract is a question of law for the Court. *See Fabricant v. Kemper Indep. Ins. Co.,* 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007); *Altman Cont'rs, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So. 3d 273, 276 (Fla. 2017); *Thomas v. Fusilier*, 966 So. 2d 1001, 1002 (Fla. 5th DCA 2007). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties – not a strained, forced or unrealistic construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002).[11] The Patients' co-payments are not covered by their policies.

Clearview's theory addresses *only* the Patients' co-payment amounts. (ECF No. 19 ¶¶ 22-25). As Clearview concedes, it is not challenging the portion of its bill (the 80%) otherwise covered by the Patients' PIP benefits. (*Id.* at ¶ 22). While Clearview argues that it must be paid *more* for the portion of the bill to be paid by the Patients, it is attempting to make its case in the absence of the very people (the Patients) most affected. There is no statutory or policy basis for Clearview to sue Progressive over patient co-payments. By definition, a co-payment amount is *not* covered by the policy.

---

[11]    When an insurance contract is entered into on a matter governed by statute, "the parties are presumed to have entered into such agreement with reference to the statute, and the statutory provisions become part of the contract." *Grant v. Progressive Fire & Cas. Co.*, 638 So. 2d 936, 938 (Fla. 1994).

Clearview brings this Action based on assignments from the Patients (ECF No. 19, Exs. C, E, and G); but those assignment are limited to insurance benefits. The co-payments are not insurance benefits; they represent the 20% of medical expenses *not* covered by the PIP Statute or the policies. (*See* Fla. Stat. § 627.736(1)(a) (2018) and Ex. 1 at 8-9; Exs. 2-3 at 7). The assignments specifically provide that: "I [the Insured] understand that I remain personally responsible for the total amounts due Assignees for their services." (ECF No. 19 at Exs. C, E and G). That "total amount" includes the co-payments *not* covered by insurance benefits.

No policy provision provides *coverage* for the Patients' co-payments, and Clearview cannot point to one. Indeed, the policy specifically provides coverage for only "80% of all reasonable expenses incurred for **medically necessary** medical, surgical, x-ray, dental and rehabilitative services. . . . " (Ex. 1 at 8-9; Exs. 2-3 at 7-8). There is no policy agreement to pay the additional 20% attributable to a patient's co-payment. Finding "coverage" for the insured's co-payment amount would also render Medpay coverage (the optional coverage which picks up payment for co-payments) moot – which is an unreasonable and absurd result.

While the policy includes some language regarding Progressive's protection of an insured in the event of a dispute, that language is quoted only selectively by Clearview and does not apply to this dispute. The specific policy language states:

> The **insured person** shall not be responsible for payment of any reductions applied by **us**. If a medical provider disputes an amount paid by **us**, **we** will be responsible for resolving such dispute. If a lawsuit is initiated against an **insured person** as a result of the reduction of a medical bill by **us**, other than reductions taken pursuant to FL St. 627.736 (5)(a)(1) (a through f), **we** will provide the **insured person** with a legal defense by counsel of **our** choice, and pay any resulting judgment. . . .

(Ex. 1 at 14-15; Exs. 2-3 at 14).

Clearview's breach of contract claim improperly relies on the first sentence read in a vacuum: "The **insured person** shall not be responsible for payment of any reductions applied by **us**."[12] (ECF No. 19 at ¶¶ 97-98). On its face, this sentence does not apply to the Patients' co-payments.  The adjustments applied by Progressive on the *80% of the bills covered by PIP benefits* were the only "reductions" actually "applied" by Progressive. While the EOBs may have a line for the "Deductible/Co-Pay" (ECF No. 19 at Exs. D, F, H), that merely displays the 20% of the Allowed Amounts *not covered by Progressive*. That is not a reduction "applied" by Progressive; because Progressive cannot reduce amounts covered by an insured's co-payment (and not covered by insurance).

Not only does the first sentence not apply to insured co-payments, it does not create any "indemnification" obligation on the part of Progressive.  The first sentence applies only to disputes regarding the "amount paid by [Progressive]" and cannot apply to disputes regarding amounts paid (or not paid) by the Patients. The second sentence specifically exempts "reductions taken pursuant to FL St. 627.736(5)(2) (a through f) [the Schedule]" from Progressive's defense of such suits – which are *exactly* the reductions identified by Clearview here.  To the extent that the Policies can be read to require Progressive to defend Patients in billing disputes, it is clear that the dispute raised here is not covered by such provisions.

---

[12]     It is "necessary to examine the contract in its context and as a whole, and to avoid simply concentrating on certain limited provisions to the exclusion of the totality of others." *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).

**B.** **Clearview's Dispute is With the Patients (and Not Progressive)**

As Clearview notes, the policy includes language that "[whenever] a medical provider agrees to a reduction of **medical benefits** charged, any co-payment owed by an **insured person** will also be reduced." (ECF No. 19 at ¶ 24). Clearview does not agree to the reduction herein. And even if that language did not require the provider's agreement, it does not create any obligation to cover the co-payment on the part of Progressive.

To the extent that Clearview has a dispute regarding the amount of the co-payment, that is an issue between the provider and the Patients—and not Progressive. Clearview should be prosecuting its theory in actions against the Patients directly. Of course, such actions are unlikely to be successful because the PIP Statute explicitly provides that:

> If an insurer limits payment as authorized by subparagraph 1. [the Schedule], the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits.

Fla. Stat. § 627.736(5)(a)4.  As Clearview concedes, this provision "prohibits a health care provider from balance-billing their insured patients for reductions applied pursuant to the [Schedule]." (ECF No. 19 at ¶ 54).

**C.** **The *Florida Hospital* Case Does Not Support Clearview's Theory**

Clearview overreaches in relying on *Progressive Select Ins. Co. v. Fla. Hosp. Med. Cntr.*, 260 So. 3d 219 (Fla. 2018) to support its theory. (ECF No. 19 at ¶ 25). First, that case addressed the application of the Schedule to bills affected by an insured's PIP *deductible* – and not amounts affected by an insured's co-payments. *Id.* at 220. Second, the dispute concerned the payment of the *80% of PIP benefits covered by Progressive*; and not the amounts payable

by the patients themselves (unlike this Action).  Because Progressive had erroneously assumed that the Schedule should be applied to calculate the amount of benefits covered by the insured's PIP deductible prior to accessing insurance (the first $1,000 in medical bills), Progressive had wrongly attributed the amounts covered by the deductible before *calculating its own obligations* as to the payment of the 80% covered by the policy. 260 So. 3d at 221, 224. The dispute was over Progressive's calculation of its *own obligations* as to 80% covered by the policy – and not amounts payable by the insured, who was not a party to the action. *Id.* at 226. By contrast, this Action does not challenge Progressive's calculation of its own obligations as to the 80% covered by the Policies.  It challenges the payment for the 20% not covered by the Policies based on the Schedule. (ECF No. 19 at ¶ 22).

Third, the *Fla. Hosp.* case addressed the interplay between the PIP Statute and a specific Florida statute addressing PIP deductibles: Fla. Stat. § 627.739 (the "Deductible Statute"). The Deductible Statute provides that a deductible "be subtracted from '100 percent' of expense and losses" (*i.e.* without Schedule reductions) *before* an insurer calculates the amount covered by PIP benefits under the policy. 260 So. 3d at 226. That statute has no application to an insured's co-payments and no application to this case. The "100 percent" mandate in that Statute applies only to deductibles covered by that Statute. By contrast, the PIP Statute itself includes a specific provision that governs an insured's co-payments – Fla. Stat. § 627.736(5)(a)2. And that provision – unlike the Deductible Statute – specifically forbids balance billing Patients for Schedule reductions.

**D.**     **The Suspect *Abreu* Ruling Does Not Support Clearview's Theory**

Alternatively, Clearview appears to rely on a county court ruling in *Advantacare of Fla., LLC (Abreu) v. Progressive Am. Ins. Co.*, 25 Fla. L. Weekly Supp. 61a (Fla. 7th Jud'l Cnty. Ct. Mar. 17, 2017), *per curiam aff'd*, Case No. 2017-1008-APCC (Fla. 7th Jud'l Cir. (App.) Mar. 28, 2018)). (ECF No. 19 at ¶ 25). *Abreu* does not constitute binding precedent. And *Abreu*, like *Fla. Hosp.*, does not directly address the issues raised here. In *Abreu*, a provider challenged the application of the Schedule *to the 80% of the payment* covered by the Progressive policy. It did not focus on the calculation of the insured's co-payment.

More importantly, *Abreu* is no longer good law. The ruling pre-dates the decision in *State Farm Mut. Auto. Ins. Co. v. MRI Assocs. of Tampa, Inc.*, 252 So. 3d 773 (Fla. 2d DCA May 18, 2018). In that case, the court reviewed policy language very similar to Progressive's and determined that – notwithstanding the provider's arguments and the trial court's ruling – the insurer's policy language effectively elected to limit reimbursement based on the Schedule. (*Id.* at 778; *see also Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 979-80 (Fla. 2017) (finding that similar policy language effectively elected to limit reimbursement based on the Schedule)). Several circuit appellate courts, as well as federal courts, have indicated that the very Progressive policy language at issue in this case **does effectively elect to limit reimbursement based on the Schedule**. *See John S. Virga, D.C., P.A. v. Progressive Am. Ins. Co.*, 215 F. Supp. 3d 1320, 1324-25 (S.D. Fla. 2016); *UR Health Chiro. Corp. v. Progressive Select Ins. Co.*, 285 F. Supp. 3d 1345, 1347-48 (S.D. Fla. 2018); *Progressive Am. Ins. Co. v. Neurology Partners, P.A. (Evans)*, (Appeal No. 2017-AP-0060) (Fla. 4th Jud'l Cir. (App.) Apr. 30, 2019); *Moore Chiro. Cntr. Inc. (Beech) v. Progressive Express Ins. Co.*, (Appeal No. 2017-

16

49430645;1

CA-0974) (Fla. 4th Jud'l Cir. (App.) Jan. 14, 2019); *Neurology Partners, PA. (Vos) v. Progressive Am. Ins. Co.*, (Appeal No. 2017-AP-39) (Fla. 4th Jud'l Cir. (App.) Apr. 20, 2018); *Sea Spine Ortho. Inst., LLC (Montalvo) v. Progressive Select Ins. Co.*, 26 Fla. L. Weekly Supp. 401a (Fla. 9th Jud'l Cir. Cnty. Apr. 12, 2018), *aff'd*, Case No. 2016-CV-000069 (Fla. 9th Jud'l Cir. Apr. 12, 2018); *Progressive Select Ins. Co. v. Injury Treatment Cntr. of Boynton Beach, Inc. (Genovese)*, 25 Fla. L. Weekly Supp. 223a (Fla. 15th Jud'l Cir. (App.) May 8, 2017) (the slip decisions are attached as composite **Exhibit 10**).

Notably, Clearview relied on a very similar second county court order in its original complaint: *Hess Spinal & Medical Cntrs., Inc. (Iliev) v. Progressive Am. Ins. Co.*, 25 Fla. L. Weekly Supp. 564a (Fla. 13th Jud'l Cnty. Ct. Aug. 22, 2017). (ECF No. 1-1 at ¶ 23 n.5).  That order has been omitted from the Amended Complaint. Indeed, the day after Plaintiffs filed their Amended Complaint, the *Hess Spinal* order was reversed. (*See* **Exhibit 11** hereto). The appellate panel found that Progressive's policy language clearly elected to limit reimbursement based on the Schedule; and directed the trial court to enter judgment for Progressive. This decision is consistent with Progressive's position that *Abreu* is no longer viable authority.

## II.   The Patients Are Necessary Parties to this Action

Clearview is challenging the Patients' policies and seeking to increase the amount of their co-payments. Clearview does not "own" those policies; it is a mere assignee of certain of the Patients' PIP benefits. Accordingly, the Patients are necessary parties to this proceeding.

> If a suit is brought by either an assignor or partial assignee, the obligor has the option of requiring joinder of the necessary parties or resorting to interpleader. Fed.R.Civ.P. 19, 22; see *Yorkshire Insurance Co. v. United States*, 171 F.2d 374, 376 (3d Cir. 1948), *aff'd sub nom. United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949). The fact that the

litigation is in the form of a class action rather than an ordinary suit does not impair the obligor's right to insist upon joinder of all interested parties.

*In re Fine Paper Litig.*, 632 F.2d 1081, 1091 (3d Cir. 1980); *see also Green Tree Fin. Corp. v. Holt*, 171 F.R.D. 313, 317-18 (N.D. Ala. 1997) (seller who claimed interest in assignee's action against purchase was an indispensable party). Under Fed. R. Civ. P. 19, an absent party is required when: (a) the court cannot accord complete relief among the existing parties; (b) the nonparty would be prejudiced in its ability to protect itself in the litigation; and (c) the nonparty's absence creates a substantial risk that existing parties would incur duplicative obligations. *Hallums v. Infinity Ins. Co.*, 2018 WL 1009277, at *1 (S.D. Fla. Feb. 20, 2018); *Raimbeault v. Accurate Mach. & Tool, LLC*, 302 F.R.D. 675, 682-83 (S.D. Fla. 2014).

There can be no doubt that the non-joinder of the Patients meets this test: (a) the Court cannot accord complete relief as to their co-payments and PIP coverage without their presence; (b) the Patients will be prejudiced in their ability to protect themselves against arguments addressing their co-payments if absent; and (c) their absence creates a substantial risk that providers will attempt to collect increased co-payments from the Patients in possible duplicative litigation or otherwise. As set forth above, Fla. Stat. § 817.234(7)(a) requires medical providers to collect such co-payments; and Clearview makes no allegation that it has attempted to collect the co-payment from the Patients. It is clear that the Patients must be joined.[13]

---

[13]    Joinder remains feasible under Rule 19(a)(2) if these parties are added. Even though the Patients are Florida citizens, the minimal diversity required under the Class Action Fairness Act will remain. *See* 28 U.S.C. § 1332(d)(2); *Hallums*, 2018 WL 1009277, at *2-3 (joining lessor would not defeat jurisdiction under CAFA since at least one plaintiff was diverse from at least one defendant).

When an injunction or declaration regarding a policy is sought, the insureds and insurers are necessary parties. *See, e.g., Liberty Mut. Fire Ins. Co. v. Int'l Video Distrib., L.L.C.*, 2014 WL 11776959, at *3 (S.D. Fla. July 2, 2014) (when declaratory relief was sought with regard to auto policy, the parties at issue were the insurers and insureds who entered into the policy); *Raimbeault*, 302 F.R.D. at 684 (in cases challenging a contract, all parties to that contract will typically be joined); *see also Am. Standard Ins. Co. v. Rogers*, 123 F. Supp. 2d 461, 467-68 (S.D. Ind. 2000) (injured third party was necessary party in declaratory action by auto insurer seeking to determine liability under the policy); *1800 Atlantic Condo. Ass'n, Inc. v. 1800 Atlantic Devs.*, 569 So. 2d 885, 886 (Fla. 3d DCA 1990) (where an order is sought for an injunction under a contract, all parties to the contract should be joined); *Two Islands Dev. Corp. v. Clarke*, 157 So. 3d 1081, 1084 (Fla. 3d DCA 2015) (same).

**III.    The Policy Must Be Interpreted in the Light
         <u>Most Favorable to the Patients (and not Clearview)</u>**

Any argument that the Patients need not be joined because recovery of the co-payments is not sought from them directly ignores that any adjudication regarding their co-payments affects the Patients and their policy rights directly. Even if the court were inclined to find any ambiguity regarding coverage of the Patients' co-payments in the Policies (which it should not), it must resolve any question in favor of **the Patients**. *Pressley*, 28 So. 3d at 108 ("the provisions of the Florida No-Fault Act are construed liberally in favor of the insured."). *Cf. Orthopedic Specialists*, 212 So. 3d at 976 (no-fault policies are to be construed in favor of the insured). By suing Progressive pursuant to assignments executed by the Patients, Clearview "stands in the shoes" of those Patients. *See A&M Gerber Chiro. LLC v. Geico Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019) (in PIP class action, assignee stands in the shoes of the

assignor and has no greater rights than assignor); *Price v. RLI Ins. Co.*, 914 So. 2d 1010, 1013 (Fla. 5th DCA 2005). In this dispute, those shoes are an uncomfortable fit. The policy construction benefitting the Patients is the one that allows the Schedule to be applied to *reduce* the Patients' co-payments.  Even if this Court were to find that those co-payments would need to be picked up by Progressive, the amount of those payments might lead to the earlier depletion of overall policy limits or cause policy premiums to rise – the very things that the 2012 amendments to the PIP Statute were designed to avoid. To construe the policy in favor of the Patients, this Court must reject Clearview's theory. *See Nunez v. Geico Gen. Ins. Co.* 117 So. 3d 388, 395 & 398 (Fla. 2013) (court noted that the PIP Statute must be construed in favor of the insured); *Cf. Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979) ("Moreover, even were we to find that the policy is ambiguous . . . we would still have to prefer [the insurer's] interpretation because it . . . is therefore actually the more favorable to the insured.").

**IV.     Clearview Has Not Alleged Compliance with Pre-Suit Demand Requirement of Fla. Stat. § 627.736 by the Proposed Class**

Section (10) of the PIP Statute provides (emphasis added):

(10)     DEMAND LETTER.—

(a)     **As a condition precedent to filing any action for benefits under this section, written notice of an intent to initiate litigation must be provided to the insurer.** Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

* * *

(d)     **If, within 30 days after receipt of notice by the insurer, the overdue claim specified in the notice is paid by the insurer** together with applicable interest and a penalty of 10 percent of the overdue amount paid by the insurer, subject to a maximum penalty of $250, **no action may be brought against the insurer**.

*See also Menendez v. Progressive Express Ins. Co.*, 35 So. 3d 873 (Fla. 2010) (demand letter requirement is substantive); *MRI Assocs. of Am. v. State Farm Fire and Cas. Co.*, 61 So. 3d 462, 465 (Fla. 4th DCA 2011) ("The statutory requirements surrounding a demand letter are significant, substantive preconditions to bringing a cause of action for PIP benefits."); *Bristol West Ins. Co. v. MD Readers, Inc.*, 52 So. 3d 48, 51 (Fla. 4th DCA 2010). As stated in *Ocean Harbor Cas. Ins. v. MSPA Claims I*, 261 So. 3d 637 (Fla. 3d DCA 2018), the law "mandates that a demand letter to be sent to the insurer as a condition precedent to litigation." *Id.* at 648. Clearview does not allege its own specific compliance with this requirement – let alone compliance by the class members. *See Bristol West*, 52 So. 3d at 52 (Warner, J., concurring) demand requirement "leads me to understand that a class action for benefits would be a practical impossibility, because each provider must serve the statutory notice."); *Shenandoah Chiro., P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283, 1285 (S.D. Fla. 2007).

Incredibly, Clearview contends that this provision does not apply because this is "not an action for benefits." (ECF No. 19 ¶ 94). Instead, Clearview alleges that this is an "action seeking damages caused by [Progressive's] breach of its agreement to be responsible for unlawful reductions of the insured's coinsurance or co-payment obligation." (*Id.*). Not only is Progressive not responsible for an insured's co-payment (*see supra*), the only way that Progressive *could* be responsible for such a payment is if the amounts were payable as benefits under the policy. If Clearview has standing to sue Progressive, it would only be because its "damages" are covered by the insured's contract *benefits*. And that would require compliance

with the demand letter requirement.[14]

## V.      Clearview Contemplates Improper Splitting of PIP Claims

Even if Clearview was to foreswear damages on its own behalf, the rule against splitting a cause of action requires that class members bring their damage claims in this Action or risk losing those claims. Section 15 of the PIP Statute requires that a PIP plaintiff generally must bring "all claims related to the same health care provider for the same injured person in one action[.]"). Fla. Stat. § 627.736(15). Case law also requires that all damages sustained as a result of a single wrongful act—here the alleged denial of PIP benefits—must be brought in one action or not at all. *Vanover v. NCO Fin. Servs., Inc.*, 2017 WL 2129557, at *7 (11th Cir. May 17, 2017); *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1395 (11th Cir. 1996) ( "the rule against splitting causes of action makes it incumbent upon plaintiffs to raise all available claims involving the same circumstances in one action."); *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 673 (S.D. Fla. 2009) (claim-splitting rule "applies with equal force in the class action context."); *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 367 (S.D. Iowa 2008) (no class action exception to claim-splitting rules).

While Clearview may seek only amounts associated with the application of the Schedule to its bill in connection with the insured's co-payment, other providers may have other issues related to Progressive's or a patient's handling or payment of their bills, including reductions based on the emergency medical condition provisions of the PIP Statute, reductions or denials based on a lack of reasonableness or medical necessity of treatment, etc. Given the

---

[14]     Clearview cannot allege actual compliance by every member of the class; and every class member has to comply with the requirement. *Ocean Harbor*, 261 So. 3d at 648; *Shenandoah.*, 526 F. Supp. 2d at 1290.

requirement of Section 15 that all such issues be brought together, it is no wonder that class actions for PIP benefits are typically not feasible. *See, e.g.*, *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762 (11th Cir. 2012), *aff'g* 271 F.R.D. 676 (S.D. Fla. 2010) (rejecting certification of PIP class for damages, declaratory relief, and injunctive relief); *Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.*, 458 F. App'x 793 (11th Cir. 2012), *aff'g*, 271 F.R.D. 538 (S.D. Fla. 2010) (rejecting certification of PIP class for damages and declaratory relief); *Ocean Harbor*, 261 So. 3d at 639, 648 (reversing class action against PIP insurer and noting that "establish[ing] liability will necessarily devolve into a series of mini-trials under Florida no-fault law"); *IDS Prop. Cas. Ins. Co. v. MSPA Claims 1, Ltd.,* 263 So. 3d 122, 124-25 (Fla. 3d DCA 2018) (as stated in *Ocean Harbor*, 261 So. 3d at 648, payments under the PIP Statute "proceed[] on a factually intensive bill-by-bill and case-by-case basis.").

In the Amended Complaint, Clearview attempts to "solve" this problem by excluding claims "barred by operation of Section 627.736(15)." (ECF No. 19 at ¶ 55). But this is a nonsensical solution because claims that must be joined under the claim-splitting rules and Section 15 *cannot* be excluded as a matter of law. And identification of such claims is a practical impossibility because it requires the joinder and/or input of all potential class members as to the identity of any other claims that they wish to pursue – something that cannot be identified by Progressive or Clearview.

## VI.   Clearview's Counts for Declaratory and Injunctive Relief Should Be Dismissed Because Clearview Has an Adequate Remedy at Law

Clearview has a remedy at law. Its contract claim would resolve the legal issue (whether the Schedule may be applied to the insured's co-payment and whether Progressive is responsible therefor) *and* any accompanying claim for benefits. *See State Farm Mut. Auto. Ins.*

*Co. v. Nichols*, 932 So. 2d 1067, 1072 (Fla. 2006) (a PIP suit seeks "to recover damages for breach of insurance contract"); *Progressive Express Ins. Co. v. McGrath Cmty. Chiro.*, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005) (medical provider may sue for PIP benefits if the insured has assigned the right to such benefits under the policy to the provider); *see also Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1318 (S.D. Fla. 2011) (breach of contract was adequate remedy for alleged miscalculation of PIP benefits); *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1210 (same).

Florida courts have dismissed claims for declaratory relief if a breach of contract claim is available. *See, e.g., John S. Virga, D.C., P.A. v. Progressive Am. Ins. Co.*, 215 F. Supp. 3d 1320, 1323-24 (S.D. Fla. 2016) (dismissing similar PIP declaratory relief claim):

> It is axiomatic that equitable relief is available only in the absence of an adequate remedy at law. Here there is an adequate legal remedy – damages for breach of contract. Accordingly, declaratory relief is not available where the issue is whether an unambiguous contract has been breached. Neither side disputes that a contract governs the instant action and, for that simple reason alone, the class claim for declaratory relief must be dismissed.

*See also Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017) (dismissing declaratory judgment claim against insurer when insured could obtain relief from a breach of contract claim); *Berkower v. USAA Cas. Ins. Co.*, 2016 WL 4574919, at *3 (S.D. Fla. Sept 1, 2016) (dismissing declaratory relief claim against an insurer, noting "a court still must dismiss a claim for declaratory relief if it is duplicative of a claim for breach of contract, and, in effect, seeks adjudication on the merits of a breach of contract claim."); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diag. Imaging, Inc.,*

2012 WL 1565387, at *4 (M.D. Fla. May 2, 2012) (dismissing declaratory relief counterclaim where there was "a sufficient remedy at law for damages").

In affirming the dismissal of claims for declaratory and injunctive relief in *Tiller v. State Farm Mut. Auto. Inc. Co.*, 549 F. App'x 849 (11th Cir. 2013), the court noted that the declaratory and injunctive relief claims were really "direct actions for money damages masquerading as claims for equitable and declaratory relief." *Id.* at 855. So it is with Clearview's declaratory relief claim in this case. Clearview has an adequate available remedy at law, and the count for declaratory relief should be dismissed.

### Conclusion

WHEREFORE, Progressive respectfully requests that the Court dismiss the Class Action Complaint against Progressive in its entirety and with prejudice.

Respectfully submitted,

**AKERMAN LLP**

*/s/ Marcy Levine Aldrich*
Marcy Levine Aldrich (FBN 968447)
marcy.aldrich@akerman.com
debra.atkinson@akerman.com
Ari H. Gerstin (FBN 0839671)
ari.gerstin@akerman.com
marylin.herrera@akerman.com
Ross E. Linzer (FBN 73094)
ross.linzer@akerman.com
vivian.lopez@akerman.com
Three Brickell City Centre
98 Southeast Seventh Street
Miami, Florida 33131
Phone: (305) 374-5600
Fax: (305) 374-5095

and

49430645;1

Leslie E. Joughin, III (FBN 339385)
les.joughin@akerman.com
nicole.emmett@akerman.com
Jason L. Margolin (FBN 69881)
jason.margolin@akerman.com
judy.barton@akerman.com
401 East Jackson Street, Suite 1700
Tampa, Florida 33602
Phone: 813.209.5009
Fax: 813.218.5488

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record on the below Service List.

*/s/ Marcy Levine Aldrich*

## SERVICE LIST

J. Daniel Clark
Clark & Martino, P.A.
Primary E-mail: dclark@clarkmartino.com
Secondary E-mail: rsmith@clarkmartino.com
3407 W. Kennedy Boulevard
Tampa, FL 33609
Tel: 813-879-0700

David M. Caldevilla, Esquire
de la Parte & Gilbert, P.A.
Primary email: dcaldevilla@dgfirm.com
Secondary email: serviceclerk@dgfirm.com
Post Office Box 2350
Tampa, Florida 33601-2350
Tel: 813-229-2775

Matthew A. Crist
Crist Legal | PA
Primary E-mail: cristm@cristlegal.com
606 East Madison Street
Tampa, FL 33602
Tel: 813-575-5200

*Counsel for Plaintiff*

49430645;1