## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CLEARVIEW IMAGING, LLC d/b/a
CLEARVIEW OPEN MRI**, as
assignee, individually, and on behalf
of all similarly situated,

**Class Representation**

              Plaintiff,

Case No. 8:19-cv-1299-MSS-CPT

**vs.**

**PROGRESSIVE AMERICAN
INSURANCE COMPANY**, **and
PROGRESSIVE SELECT INSURANCE
COMPANY,**

              Defendants.

_____/

### FIRST AMENDED[1] CLASS ACTION COMPLAINT AGAINST DEFENDANT
### PROGRESSIVE SELECT INSURANCE COMPANY
### AND DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 7(a)(1), 15(a)(1)(B), and 23, Plaintiff,

Clearview Imaging, LLC d/b/a Clearview Open MRI (the "**Health Care Provider**"), as assignee,

individually, and on behalf of all similarly situated, hereby asserts the following claims against

Defendant Progressive Select Insurance Company (the "**Insurance Company**"), and states:

---

[1] Plaintiff's lawsuit against Defendant Progressive Select Insurance Company was originally filed in the Circuit Court of the Florida Thirteenth Judicial Circuit for Hillsborough County, Florida. On August 1, 2019, the Defendant removed this case to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and 28 U.S.C. § 1453, as well as 28 U.S.C. §§ 1441 and 1446, and U.S. M.D. Fla. Local Rule 4.02.  That case was assigned Case No. 8:19-cv-01881-MSS-AEP.  By order dated August 30, 2019 (Doc. 23), Case No. 8:19-cv-01881-MSS-AEP was consolidated with Case No. 8:19-cv-1299-MSS-CPT, in which the Defendant is a related company, Progressive American Insurance Company. Because the initial complaint against Defendant Progressive Select Insurance Company was pled to conform to the Florida Rules of Civil Procedure, this amended complaint is being filed to conform to the Federal Rules of Civil Procedure and otherwise update the allegations of the initial complaint.  Moreover, the material allegations of this amended complaint are substantially identical to the material allegations of the amended complaint filed against Defendant Progressive American Insurance Company (Doc. 19).

**Preliminary Allegations**

1.       This is an action asserting class action claims and/or individual claims for declaratory relief, injunctive relief, and damages.

2.       The Health Care Provider is, and at all material times has been, a Florida professional association that provides health care services to Florida residents who have sustained personal injuries in motor vehicle accidents, and who have assigned to the Health Care Provider their insurance benefits under automobile insurance policies issued by the Insurance Company.

3.       The Insurance Company is an Ohio corporation doing business under the laws of the State of Florida, and at all material times, sold motor vehicle insurance, including personal injury protection (**"PIP"**) coverage, in the State of Florida.

4.       This case involves terms and conditions generally found in all of the Insurance Company's motor vehicle insurance policy forms used in the State of Florida since 2013, which for purposes of this case, are substantially identical in all material respects to policy Form 9611D FL (07/13) attached hereto as **"Exhibit A"** (the **"Insurance Policy"**).

5.       This case involves a dispute, which is continuing and ongoing in nature, concerning the amount of insurance benefits that must be paid by the Insurance Company pursuant to the terms of the Insurance Policy when the Insurance Company erroneously and unlawfully reduces the 20% portion of a medical bill that is covered only by the insured patient's coinsurance or co-payment obligation.

6.       The legal issues at the crux of this lawsuit are: (a) whether the Insurance Company is lawfully authorized to extend and apply the "schedule of maximum charges" described in Section 627.736(5)(a)1, Florida Statutes (2012-2019) to reduce the 20% portion of an insured patient's medical bill that is covered only by the insured patient's own coinsurance or co-payment obligation, and (b) if not, whether the Insurance Company has agreed in the Insurance Policy to

be responsible for paying the insured patient's health care provider for the amount of the unlawful reduction.

7.      Venue is proper in the U.S. District Court of the Middle District of Florida because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and/or because the Insurance Company is a corporation subject to personal jurisdiction in this judicial district at the time the action was commenced.

8.      All conditions precedent to the maintenance of this action have occurred, have been performed, or have been waived.

### Background Information Concerning Florida Motor Vehicle No-Fault Law

9.      The "Florida Motor Vehicle No-Fault Law" was originally enacted in 1971 and is a set of 12 statutes found in Sections 627.730 through 627.7405, Florida Statutes. *See*, Ch. 71-252, Laws of Fla. (1971).

10.     This case involves the versions of the Florida Motor Vehicle No-Fault Law in effect since January 1, 2013, as enacted in Chapter 2012-197, Laws of Florida.

11.     PIP coverage is governed by Section 627.736, Florida Statutes (the "**PIP statute**"), which is one of the statutes within the Florida Motor Vehicle No-Fault Law.

12.     Pursuant to Section 627.7407(2), Florida Statutes, any PIP insurance policy in effect on or after January 1, 2008 "shall be deemed to incorporate the provisions of the Florida Motor Vehicle No-Fault Law…."

13.     Since 1971, the PIP statute has always included provisions which explained that PIP insurers are required to pay up to $10,000 of the insured's reasonable medical expenses. *See*, §627.736(1), Fla. Stat. (1971-2019). This provision is known as the PIP statute's "reasonable medical expenses coverage mandate" (the "**Reasonable Medical Expenses Coverage Mandate**"). As explained by the Florida Supreme Court, "no insurer can disclaim" the PIP statute's Reasonable

Medical Expenses Coverage Mandate. *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So.3d 973, 977 (Fla. 2017).

14.     The PIP statute's Reasonable Medical Expenses Coverage Mandate requires all motor vehicle insurance policies to pay 80% of "all reasonable expenses" for medical services covered by PIP. *See*, §627.736(1)(a), Fla. Stat. (2012-2019).

15.     While PIP insurance covers 80% of the insured's reasonable medical expenses, the insured is personally responsible for paying the remaining 20% portion of the medical bill as coinsurance, which is also sometimes also referred to as the co-payment.

16.     Since 1971, the PIP statute has always included a fact dependent method (the "**Fact Dependent Method**") for calculating the amount of reasonable medical expenses covered by PIP statute's Reasonable Medical Expenses Coverage Mandate. *See*, §627.736(5), Fla. Stat. (1971-1997); §627.736(5)(a), Fla. Stat. (1998-2007); §627.736(5)(a)1, Fla. Stat. (2008-2011); §627.736(5)(a), Fla. Stat. (2012-2019).

17.     Starting in 2008, the Florida Legislature added a second alternative payment calculation method, which is optional and permissive, and states that PIP insurers "may limit reimbursement to 80 percent of [an enumerated] schedule of maximum charges" and that method is commonly referred to as the "**Fee Schedule Method**."[2] *See*, §627.736(5)(a)2-5, Fla. Stat. (2008-2011); §627.736(5)(a)1-5, Fla. Stat. (2012-2019).[3]

---

[2]  *See, e.g., Geico Gen. Ins. Co. v. Virtual Imaging Services, Inc.,* 141 So.3d 147, 158 (Fla. 2013) (referring to the "fee schedule method").

[3]  As of January 1, 2013, an amendment to the PIP statute resulted in the renumbering of the subsections of the Fact Dependent Method and the Fee Schedule Method. Before January 1, 2013, the Fact Dependent Method was found in subsection (5)(a)1, but it is now found in subsection (5)(a). Before January 1, 2013, the Fee Schedule Method was found in subsections (5)(a)2-5, but it is now found in subsections (5)(a)1-5.

18.     Under the PIP statute, only the "insurer" is allowed to limit its own "reimbursement" to 80% of the schedule of maximum charges set forth in the Fee Schedule Method. *See,* §627.736(5)(a)1, Fla. Stat. (2012-2019); *Progressive Select Ins. Co. v. Florida Hosp. Med. Cntr.*, 260 So.3d 219, 224 (Fla. 2018) ("section 627.736(5)(a)1. only permits an 'insurer' to limit 'reimbursement' based on the schedule of maximum charges").

19.     In contrast, the Fee Schedule Method does not apply to any "amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits." *See,* §627.736(5)(a)4, Fla. Stat. (2012-2019).  In other words, the Fee Schedule Method does not apply to portions of a medical bill that the insured is solely responsible for paying. *See, Progressive*, 260 So.3d at 224 ("There is no basis for concluding that the reimbursement limitation applies to charges … which the insured alone is obligated to pay") (internal quotation marks omitted).

20.     For purposes of this lawsuit, the pertinent provisions of the PIP statute state the following:

> 627.736  Required personal injury protection benefits; exclusions; priority; claims.—
>
> [*The "Reasonable Medical Expenses Coverage Mandate" is found in (1)(a), and states:*]
>
> (1)   REQUIRED BENEFITS.—An insurance policy complying with the security requirements of s. 627.733 must provide personal injury protection ... to a limit of $10,000 in medical and disability benefits and $5,000 in death benefits resulting from bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:
>
> (a)   Medical benefits.—**Eighty percent of all reasonable expenses** for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices and medically necessary ambulance, hospital, and nursing services if the individual receives initial services and care ....
>
>      . . . . .

[*The "Fact Dependent Method" is found in (5)(a), and states:*]

(5)    CHARGES FOR TREATMENT OF INJURED PERSONS.—

(a)    A physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered, and the insurer providing such coverage may pay for such charges directly to such person or institution lawfully rendering such treatment if the insured receiving such treatment or his or her guardian has countersigned the properly completed invoice, bill, or claim form approved by the office upon which such charges are to be paid for as having actually been rendered, to the best knowledge of the insured or his or her guardian. However, such a charge may not exceed the amount the person or institution customarily charges for like services or supplies. In determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

[*The " Fee Schedule Method" is found in (5)(a)1-5, and states in pertinent part:*]

1.    The ***insurer*** **may limit *reimbursement*** to 80 percent of the **following schedule of maximum charges**….

. . . . .

4.    **If an insurer limits payment <u>as</u> authorized <u>by</u> subparagraph <u>1.</u>, the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits**, ***except*** **for amounts that are not covered by the insured's personal injury protection coverage due to the *coinsurance* amount or maximum policy limits**.

§627.736(1)(a) and (5)(a)1 and 4, Fla. Stat. (2012-2015) (emph. added).

21.    Both methods generate a "reasonable" amount of reimbursement that satisfies the PIP insurer's statutory obligation under the Reasonable Medical Expenses Coverage Mandate. However, the Fact Dependent Method is the "default" method, and it generally generates the

*highest* level of PIP benefits that a health care provider can recover under the PIP statute,[4] while

the Fee Schedule Method generally generates the ***minimum*** or lowest level of PIP benefits that a

health care provider can recover under the PIP statute.[5]

### The Insurance Policy

22.     "Part II(A) – Personal Injury Protection Coverage" of the Insurance Policy governs

PIP coverage and purports to elect the Fee Schedule Method, with certain deviations that do not

pertain to this case.  Some Florida courts have held that the Insurance Company has not lawfully

elected the Fee Schedule Method.[6] However, the question of whether or not the Insurance Policy

lawfully elects the Fee Schedule Method, has no bearing on the outcome of this lawsuit, as this

case involves the 20% portion of the medical bill that is completely unaffected by the Fee Schedule

Method.[7]

23.     In pertinent part, Part II(A) of the Insurance Policy includes the following

provisions in which the Insurance Company ***first*** applies the Fee Schedule Method reductions to

"medical benefits" covered by the Insurance Policy, ***second*** purports to then extend those same

---

[4] *See, e.g., Allstate Fire & Cas. Ins. v. Stand-Up MRI of Tallahassee, P.A.,* 188 So.3d 1, 2-3 (Fla. 1st DCA 2015) (Fact Dependent Method "is the default methodology for calculating PIP reimbursements, which also apparently results in higher reimbursements" than the Fee Schedule Method); *Geico Indemnity Co. v. Physicians Group, LLC, a.a.o., Paul Androski,* 47 So.3d 354, 356 (Fla. 2d DCA 2010) (noting that amount payable for surgical procedure was $10,800 under the Fact Dependent Amount Method, but was merely $1,122 under the Fee Schedule Method).

[5] *See, Nationwide Mutual Insurance Company v. AFO Imaging, Inc.,* 71 So.3d 134, 137 (Fla. 2d DCA 2011) (the Fee Schedule Method is "utilized in computing the ***minimum*** amount" payable by PIP insurance) (emph. added).

[6] *See, e.g., Advantacare of Florida, LLC, a.a.o. Danely Abreu v. Progressive American Ins. Co.,* 25 Fla. L. Weekly Supp. 61a (Volusia County Ct. March 17, 2017), *affirmed,* Case No. 2017-1008-APCC (Fla. 7th Cir. Ct. App. Div. March 28, 2018).

[7] For purposes of this lawsuit, the Plaintiff does not take a position as to whether or not the Insurance Policy lawfully elects the Fee Schedule Method or not.

reductions to the insured's co-payment, and ***third*** agrees to be responsible for resolving any dispute concerning such reductions applied by the Insurance Company:

> [First:] **We will reduce any payment to a medical provider under this Part II(A) by any amounts we deem to be unreasonable medical benefits.** ... Any reductions taken will not affect the rights of an insured person for coverage under this Part II(A). [Second:] **Whenever a medical provider agrees to a reduction of medical benefits charged, any co-payment owed by an insured person will also be reduced.**
>
> [Third:] ***The insured person shall not be responsible for payment of any reductions applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such dispute.*** . . .

*See*, Exhibit A at p. 18 of 51 (emph. added).

24.     Some Florida courts have ruled that the provision of the Insurance Policy which purports to extend the Fee Schedule Method reductions to the insured's 20% coinsurance or co-payment amount is unlawful.  *See, e.g., Abreu*, 25 Fla. L. Weekly Supp. 564a at ¶45.  Likewise, the Florida Supreme Court has held that there is "no basis for concluding that the reimbursement limitation applies to charges ... which the insured alone is obligated to pay." *Progressive*, 260 So.3d at 224 (internal quotation marks omitted).

### Background Information – Examples Concerning Insured Patients

25.     The Insurance Company routinely reduces the insured's 20% coinsurance or co-payment amount in an unlawful manner, has imposed such unlawful reductions on numerous occasions, and continues to make such unlawful reductions in an ongoing and continuing matter.

26.     Three examples of the Insurance Company's numerous, ongoing, and continuing unlawful reductions involve "**Insured Patient SG**," "**Insured Patient LP**," and "**Insured Patient LC**."

27.     On or about May 9, 2018, Insured Patient SG was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

28.     At the time of that accident, Insured Patient SC was a contracting party, a named insured, and/or an omnibus insured under the Insurance Policy (or a similar insurance policy with the same operative language quoted in paragraph 23 above) issued by the Insurance Company, which was in full force and effect, and provided PIP coverage as required by law to comply with the Florida Motor Vehicle No-Fault Law.

29.     With respect to the injuries sustained by Insured Patient SG as a result of that accident, the Health Care Provider subsequently rendered health care services to the Insured Patient on or about August 8, 2018.

30.     Prior to providing such medical services and as a condition to providing them, the Health Care Provider obtained from Insured Patient SG a written assignment of benefits, a redacted copy of which is attached hereto as **"Exhibit B."**

31.     Pursuant to the assignment of benefits, the Health Care Provider "stands in the shoes" of Insured Patient SG.  *See, e.g., Geico Indem. Co. v. Virtual Imaging Services, Inc.,* 79 So. 3d 55, 58, n. 1 (Fla. 3d DCA 2011) (as policyholder's assignee, health care provider stands in the shoes of the assignor and may enforce the insurance policy against the insurance company); *Prof'l Consulting Services, Inc. v. Hartford Life & Accident Ins. Co.,* 849 So. 2d 446, 447 (Fla. 2d DCA 2003) (where insured makes a valid assignment of after-loss claims under insurance policy, the assignee stands in the insured's shoes and has the same rights and status that insured does).

32.     After providing health care services to Insured Patient SG, the Health Care Provider timely submitted a bill to the Insurance Company for the services rendered, a redacted copy of which is attached hereto as **"Exhibit C**."

33.     In response to the bill for health care services provided to Insured Patient SG, the Insurance Company issued an "Explanation of Reimbursement" form which purported to extend the Fee Schedule Method reductions to the portion of the bill that applies to Insured Patient SG's 20% coinsurance or co-payment. A redacted copy of the Explanation of Reimbursement form is attached hereto as "**Exhibit D**."

34.     With respect to the bill for health care services provided to Insured Patient SG, a side-by-side comparison of what the Insurance Company did and what the Plaintiff contends the Insurance Company should have done, is as follows:

|  | What the Insurance Company did | What Plaintiff contends the Insurance Company should have done |
|---|---|---|
| "Amount Charged" | $1,357.64 | $1,357.64 |
| (Fee Schedule Reduction) | ($291.36) | ($0.00) |
| "Allowed Amount" | 1,066.28 | $1,357.64 |
| 20% Coinsurance | x 20% | X 20% |
| Co-Payment Amount due from Insured Patient SG | $213.26 | $272.53 |
| Unlawful Co-Payment Reduction | $58.27 | N.A. |

Thus, in this example, the Insurance Company applied the Fee Schedule Method to unlawfully reduce Insured Patient SG's 20% coinsurance amount from $272.52 to $213.26, which is a reduction of $58.27.

35.     On or about July 11, 2018, Insured Patient LP was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

36.     At the time of that accident, Insured Patient LP was a contracting party, a named insured, and/or an omnibus insured under the Insurance Policy (or a similar insurance policy with the same operative language quoted in paragraph 23 above) issued by the Insurance Company,

which was in full force and effect, and provided PIP coverage as required by law to comply with the Florida Motor Vehicle No-Fault Law.

37.    With respect to the injuries sustained by Insured Patient LP as a result of that accident, the Health Care Provider subsequently rendered health care services to the Insured Patient on or about September 25, 2018.

38.    Prior to providing such medical services and as a condition to providing them, the Health Care Provider obtained from Insured Patient LP a written assignment of benefits, a redacted copy of which is attached hereto as **"Exhibit E."**

39.    Pursuant to the assignment of benefits, the Health Care Provider "stands in the shoes" of Insured Patient LP.  *See, e.g., Geico Indem. Co. v. Virtual Imaging Services, Inc.,* 79 So. 3d 55, 58, n. 1 (Fla. 3d DCA 2011) (as policyholder's assignee, health care provider stands in the shoes of the assignor and may enforce the insurance policy against the insurance company); *Prof'l Consulting Services, Inc. v. Hartford Life & Accident Ins. Co.,* 849 So. 2d 446, 447 (Fla. 2d DCA 2003) (where insured makes a valid assignment of after-loss claims under insurance policy, the assignee stands in the insured's shoes and has the same rights and status that insured does).

40.    After providing health care services to Insured Patient LP, the Health Care Provider timely submitted a bill to the Insurance Company for the services rendered, a redacted copy of which is attached as **"Exhibit F**."

41.    In response to the bill for health care services provided to Insured Patient LP, the Insurance Company issued an "Explanation of Reimbursement" form which purported to extend the Fee Schedule Method reductions to the portion of the bill that applies to Insured Patient LP's 20% coinsurance or co-payment. A redacted copy of the Explanation of Reimbursement form is attached hereto as **"Exhibit G**."

42.     With respect to the bill for health care services provided to Insured Patient LP, a side-by-side comparison of what the Insurance Company did and what the Plaintiff contends the Insurance Company should have done, is as follows:

|  | What the Insurance Company did | What Plaintiff contends the Insurance Company should have done |
|---|---|---|
| "Amount Charged" | $1,257.99 | $1,257.99 |
| (Fee Schedule Reduction) | ($251.97) | ($0.00) |
| "Allowed Amount" | $1,006.02 | $1,257.99 |
| 20% Coinsurance | x 20% | x 20% |
| Co-Payment Amount due from Insured Patient LP | $201.20 | $251.60 |
| Unlawful Co-Payment Reduction | $50.40 | N.A. |

Thus, in this example, the Insurance Company applied the Fee Schedule Method to unlawfully reduce Insured Patient LP's 20% coinsurance amount from $251.60 to $201.20, which is a reduction of $50.40.

43.     On or about September 14, 2018, Insured Patient LC was involved in a motor vehicle accident, and as a result, sustained bodily injuries related to the operation, maintenance, or use of a motor vehicle.

44.     At the time of that accident, Insured Patient LC was a contracting party, a named insured, and/or an omnibus insured under the Insurance Policy (or a similar insurance policy with the same operative language quoted in paragraph 23 above) issued by the Insurance Company, which was in full force and effect, and provided PIP coverage as required by law to comply with the Florida Motor Vehicle No-Fault Law.

45.     With respect to the injuries sustained by Insured Patient LC as a result of that accident, the Health Care Provider subsequently rendered health care services to the Insured Patient on or about December 3, 2018.

46.     Prior to providing such medical services and as a condition to providing them, the Health Care Provider obtained from Insured Patient LC a written assignment of benefits, a redacted copy of which is attached hereto as "**Exhibit H.**"

47.     Pursuant to the assignment of benefits, the Health Care Provider "stands in the shoes" of Insured Patient LC.  *See, e.g., Geico Indem. Co. v. Virtual Imaging Services, Inc.,* 79 So. 3d 55, 58, n. 1 (Fla. 3d DCA 2011) (as policyholder's assignee, health care provider stands in the shoes of the assignor and may enforce the insurance policy against the insurance company); *Prof'l Consulting Services, Inc. v. Hartford Life & Accident Ins. Co.,* 849 So. 2d 446, 447 (Fla. 2d DCA 2003) (where insured makes a valid assignment of after-loss claims under insurance policy, the assignee stands in the insured's shoes and has the same rights and status that insured does).

48.     After providing health care services to Insured Patient LC, the Health Care Provider timely submitted a bill to the Insurance Company for the services rendered, a redacted copy of which is attached hereto as "**Exhibit I**."

49.     In response to the bill for health care services provided to Insured Patient LC, the Insurance Company issued an "Explanation of Reimbursement" form which purported to extend the Fee Schedule Method reductions to the portion of the bill that applies to Insured Patient LC's 20% coinsurance or co-payment. A redacted copy of the Explanation of Reimbursement form is attached hereto as "**Exhibit J**."

50.     With respect to the bill for health care services provided to Insured Patient LC, a side-by-side comparison of what the Insurance Company did and what the Plaintiff contends the

Insurance Company should have done, is as follows:

|  | What the Insurance Company did | What Plaintiff contends the Insurance Company should have done |
|---|---|---|
| "Amount Charged" | $1,156.55 | $1,156.55 |
| (Fee Schedule Reduction) | ($172.25) | ($0.00) |
| "Allowed Amount" | $984.30 | $1,156.55 |
| 20% Coinsurance | x 20% | x 20% |
| Co-Payment Amount due from Insured Patient LC | $196.86 | $231.31 |
| Unlawful Co-Payment Reduction | $34.45 | N.A. |

Thus, in this example, the Insurance Company applied the Fee Schedule Method to unlawfully reduce Insured Patient LC's 20% coinsurance amount from $231.31 to $196.86, which is a reduction of $34.45.

## Nature of the Dispute

51.     The Health Care Provider contends that the Fee Schedule Method can only be applied to the 80% portion of the medical bill covered by the Reasonable Medical Expenses Mandate and cannot lawfully be extended to the portion of a medical bill that is covered by a PIP insured's own 20% coinsurance or co-payment obligation.   As illustrated by the foregoing examples involving Insured Patients SG, LP, and LC, the Insurance Company disagrees, and routinely purports to extend the Fee Schedule Method reductions to the portion of a medical bill that is not reimbursable by the Insurance Company, but rather, is solely covered by an insured patient's 20% coinsurance or co-payment obligation.

52.     The Health Care Provider and other similarly situated health care providers regularly provide health care services to the Insurance Company's PIP insureds, and it is reasonably anticipated that this will continue into the foreseeable future.

53.     The Insurance Company's ongoing and continuing reductions to the portion of a medical bill that is solely covered by an insured patient's 20% coinsurance or co-payment

obligation place the Health Care Provider and similarly situated health care providers in an untenable position.  On one hand, Section 627.736(5)(a)4 prohibits a health care provider from balance-billing its insured patients for reductions applied pursuant to the Fee Schedule Method. On the other hand, under Section 817.234(7)(a), Florida Statutes, it is a felony-level crime if a health care provider does not charge and fully collect the patient's co-payment. These statutory requirements place Florida health care providers in the hopeless, but ongoing and continuing, position of being unable to predict how much they can lawfully charge and collect from their patients covered by PIP insurance provided by the Insurance Company.

## Class Action Allegations

54.     Pursuant to Federal Rule of Civil Procedure 23, the Health Care Provider, together with such other individuals that may join this action as class representatives, hereby brings Counts I, II, and III of this complaint on its own behalf and on behalf of all those similarly situated persons defined as follows:

All persons and/or entities who:

(a)     are health care providers operating in the State of Florida;

(b)     issued a medical bill for health care services provided to a patient who had PIP coverage under the Insurance Policy issued by the Insurance Company during the 5-year time period prior to the filing of this lawsuit;

(c)     own an assignment of benefits from the insured patient for insurance benefits associated with the medical bill; and

(d)     received an "Explanation of Reimbursement" form from the Insurance Company which purported to extend the Fee Schedule Method reductions to the portion of the medical bill that applies to the insured patient's 20% coinsurance or co-payment;

excluding any coinsurance or co-payment claims otherwise described above which: (i) have already been fully paid by the insured or the Insurance Company, or were otherwise satisfied through litigation or settlement or release; (ii) were denied or reduced for any reason other than the Insurance Company's purported application of the Fee Schedule Method to the portion of the medical bill that applies to the

15

insured patient's 20% coinsurance or co-payment; (iii) are barred by operation of Section 627.736(15), Florida Statutes; and/or (iv) are the subject of pending litigation against the insured patient or the Insurance Company as of the date of any class certification order or other deadline established by the Court (hereinafter the **"Class"**).

55. The Health Care Provider reserves the right to amend the Class definition as discovery proceeds and to conform to the evidence.

56. While the exact number of Class members is unknown at this time, the Health Care Provider submits that the number of Class members is so numerous that separate joinder of each member is impractical. The Insurance Company's Notice of Removal (Doc. 1) alleges there are more than 100 putative Class members. In addition, according to data published by the Florida Department of Highway Safety and Motor Vehicles, there are well over 400,000 traffic accidents per year in the State of Florida, and a significant percentage of those traffic accidents result in injuries. *See,* https://flhsmv.gov/pdf/crashreports/crash_facts_2017.pdf. Accordingly, the Health Care Provider has a good faith reason to believe that, during the five-year time period described by the Class definition herein, there are more than enough similarly situated health care providers who are potential Class members to satisfy the numerosity requirements of Rule 23.

57. This action poses questions of law and fact that are common to and affect the rights of all members of the Class. Such questions of law and fact include but are not limited to the following:

(a) With respect to medical bills for health care services rendered by the Class members to insured patients with PIP coverage under the Insurance Policy, did the Insurance Company issue an "Explanation of Reimbursement" form which purported to extend the Fee Schedule Method reductions to the portion of the bills that applied only to the insured patients' 20% coinsurance or co-payment obligation?

(b)     Is a PIP insurer lawfully authorized to extend the Fee Schedule Method reductions to the portion of a medical bill that applies only to the insured patient's 20% coinsurance or co-payment obligation?

(c)     With respect to the Insurance Policy, are reductions taken by a PIP insurer pursuant to Section 627.736(5)(a)1.a through f applicable to the portion of the medical bill that is covered only by the insured patient's 20% coinsurance or co-payment obligation?

(d)     Does the Insurance Policy unlawfully purport to extend the Fee Schedule Method reductions to the portion of a medical bill that is covered only by the insured patient's 20% coinsurance or co-payment obligation?

(e)     With respect to the Insurance Policy, did the Insurance Company agree to assume responsibility or indemnify or otherwise cover its insured for disputed reductions applied by the Insurance Company?

(f)     Are the Health Care Provider and/or the Class members entitled to declaratory relief to determine the parties' respective rights and obligations concerning Section 627.736(5)(a)1 and 4, and/or the provisions of the Insurance Policy?

(g)     Are the Health Care Provider and/or the Class members entitled to injunctive relief to require the Insurance Company to cease and desist from continuing to extend the Fee Schedule Method reductions to the portion of a medical bill that applies only to the insured patient's 20% coinsurance or co-payment obligation?

(h)     Are the Health Care Provider and/or the Class members entitled to recover damages associated with the Insurance Company's business practice of purporting to extend the Fee Schedule Method reductions to the portion of a medical bill that applies only to the insured patient's 20% coinsurance or co-payment?

58.     Based on the facts and circumstances set forth herein, the Health Care Provider's claims are typical of the claims of the members of the Class and the members of each Sub-Class.

59.     Further, other individual plaintiffs may elect to join this action upon such grounds as the Court may set forth and these individuals will likewise have issues that are common to those of all other class members.

60.     The Health Care Provider and its undersigned attorneys are well-qualified and experienced in handling class action litigation and will adequately and fairly protect the interests of the Class.

61.     With respect to Counts I and II below, the Health Care Provider brings this class action pursuant to Federal Rule of Civil Procedure 23(b)(2) on the grounds that the Insurance Company has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

62.     With respect to Count III below, the Health Care Provider brings this class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on the grounds that the questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

63.     Alternatively, pursuant to Federal Rule of Civil Procedure 23(c)(4), to the extent appropriate, any claim asserted herein may be brought or maintained as a class action with respect to particular issues.

## Count I – Declaratory Relief

64.     This is a class action for declaratory relief pursuant to Chapter 86, Florida Statutes, brought by the Health Care Provider and the Class against the Insurance Company.  Alternatively,

in the event that class certification is unavailable, this count is brought by the Health Care Provider against the Insurance Company.

65.     The Health Care Provider realleges and incorporates by reference paragraphs 1-61 and 63 above.

66.     Section 627.736(10), Florida Statutes establishes a condition precedent which requires a plaintiff to submit to the PIP insurer a pre-suit demand letter prior "to filing any action for benefits under this section…."  Because this is a declaratory judgment action pursuant to Chapter 86 and is not an action for PIP benefits under Section 627.736, the pre-suit demand letter requirement of Section 627.736(10) does not apply.

67.     The Health Care Provider takes the position that a PIP insurer is not lawfully authorized to extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment obligation.   The Insurance Company disagrees and routinely purports to extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment obligation.

68.     With respect to the Insurance Policy, the Health Care Provider takes the position that reductions taken by a PIP insurer pursuant to Section 627.736(5)(a)1.a through f are not applicable to the portion of the medical bill that is covered by the insured patient's 20% coinsurance or co-payment. The Insurance Company disagrees and routinely purports to extend the Section 627.736(5)(a)1.a through f reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment.

69.     The Health Care Provider contends that the Insurance Policy unlawfully purports to extend the Fee Schedule Method reductions to the portion of a medical bill that is covered by the insured patient's 20% coinsurance or co-payment. The Insurance Company disagrees and

contends that it is lawful to extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment.

70.     The Health Care Provider contends that pursuant to the terms of the Insurance Policy, the Insurance Company agreed to be responsible for disputed reductions applied by the Insurance Company.  The Insurance Company disagrees and does not compensate health care providers for the Fee Schedule Method reductions it purports to extend to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment obligation.

71.     The Health Care Provider is in doubt concerning its rights, and a bona fide present controversy exists between the Health Care Provider, the Class members, and the Insurance Company concerning the proper interpretation of Section 627.736(5)(a)5(a)1 and 4, and other applicable law, and the express terms of the Insurance Policy, and the parties' respective rights and obligations thereunder, with respect to issues which include but are not limited to the following:

(a)     Is a PIP insurer lawfully authorized to extend the Fee Schedule Method reductions to the portion of a medical bill that applies only to the insured patient's 20% coinsurance or co-payment obligation?

(b)     With respect to the Insurance Policy, are reductions taken by a PIP insurer pursuant to Section 627.736(5)(a)1.a through f applicable to the portion of the medical bill that is covered only by the insured patient's 20% coinsurance or co-payment obligation?

(c)     Does the Insurance Policy unlawfully purport to extend the Fee Schedule Method reductions to the portion of a medical bill that is covered only by the insured patient's 20% coinsurance or co-payment obligation?

(d)     With respect to the Insurance Policy, did the Insurance Company agree to assume responsibility or indemnify or otherwise cover its insured for disputed reductions applied by the Insurance Company?

72.     The Health Care Provider does not seek a mere advisory opinion, but rather, there is a bona fide, actual, present, and practical need for a declaration of the parties' respective rights, duties, and obligations under Section 627.736(5)(a)1 and 4, and other applicable law, and the express terms of the Insurance Policy.  For example, without such a declaration, health care providers are left uncertain as to whether they are authorized under Section 627.736(5)(a)4 to charge their insured patients for the balance of the medical bill that the Insurance Company does not pay, and/or whether they are prohibited by Section 817.234(7)(a) to not charge the insured patient for that unpaid balance.  This is a present, continuing, and ongoing problem with respect to all patients covered by PIP insurance issued by the Insurance Company.

73.     The rights, status, or other equitable or legal relations of the parties are affected by Section 627.736(5)(a)1 and 4, and other applicable law, and the express terms of the Insurance Policy.  Accordingly, pursuant to Chapter 86, the Health Care Provider and the Class members may obtain a declaration of rights, status, or other equitable or legal relations thereunder.

74.     Section 86.011, Florida Statutes states that this Court has "jurisdiction … to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." Section 86.111, Florida Statutes states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief." Thus, regardless of whether damages are available to the Health Care Provider or the Class under Count III, this Court still has jurisdiction to determine the parties' respective rights, status, and other equitable or legal relations under the Florida PIP statute and/or the Insurance Policy.

75.     Section 86.011(2), Florida Statutes states that "The court may render declaratory judgments on the existence, or nonexistence … Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court still

21

has jurisdiction to determine whether the Insurance Company's conduct has been unlawful, in order to prevent the same unlawful conduct in the future.

76.     Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a … contract, … or whose rights, status, or other equitable or legal relations are affected by a statute … may have determined any question of construction or validity arising under such statute, … contract, … or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has jurisdiction to determine the rights of "any person" (such as the Health Care Provider) who is in doubt about its rights under the PIP statute and/or the Insurance Policy.  Because the Health Care Provider and the Class members routinely provide health care services to the Insurance Company's PIP insureds, the issues raised in this declaratory relief claim affect the Health Care Provider and the Class members on an ongoing and continuing basis.

77.     Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has jurisdiction to determine whether the Insurance Company has violated the PIP statute by extending the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment, and/or whether this conduct will violate the PIP Statute in the future.

78.     Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." This statute confirms that the Court has jurisdiction to determine the legality of the

Insurance Company's past conduct, in order to gauge its anticipated future conduct and to prevent unlawful conduct in the future.

79.     Section 86.071, Florida Statutes states, in pertinent part, that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury."  Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

80.     The Health Care Provider has retained the undersigned counsel to prosecute this action and is entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

<b><u>Count II – Injunctive Relief</u></b>

81.     This is a common law action for injunctive relief brought by the Health Care Provider and the Class against the Insurance Company.  Alternatively, in the event that class certification is unavailable, this count is brought by the Health Care Provider against the Insurance Company.

82.     The Health Care Provider realleges and incorporates by reference paragraphs 1-61 and 63 above.

83.     Section 627.736(10), Florida Statutes establishes a condition precedent which requires a plaintiff to submit to the PIP insurer a pre-suit demand letter prior "to filing any action for benefits under this section…."  Because this is a common law injunctive relief action and is not an action for PIP benefits under Section 627.736, the pre-suit demand letter requirement of Section 627.736(10) does not apply.

84. The Insurance Company's unlawful reductions to the portion of a medical bill that applies to its insured patients' 20% coinsurance or co-payments are applied in a routine, ongoing, and continuing to all health care providers in the State of Florida who submit PIP claims to the Insurance Company, and those unlawful reductions are reasonably expected to continue into the future absent a court order enjoining the Insurance Company from continuing to do so.

85. The Health Care Provider and the Class members will suffer irreparable injury if the Insurance Company is permitted in the future to continue unlawfully extending the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment. Examples of such irreparable injury include but are not limited to the following:

(a) Under Section 627.736(5)(a)4, "If an insurer limits payment as authorized by [Section 627.736(5)(a)1], the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's personal injury protection coverage due to the coinsurance amount or maximum policy limits." This prohibition applies only to the 80% portion of a medical bill that the Insurance Company is responsible for covering and does not apply to the insured patient's 20% coinsurance or co-payment portion of the medical bill. Thus, the Insurance Company is placing Class members in the untenable position of being unable on a present, continuing, and ongoing basis to recover full payment from their insured patients and this practice is exacting an involuntary discount from Class members every time they provide health care services to the Insurance Company's PIP insureds.

(b) Absent injunctive relief requiring the Insurance Company to cease and desist from such wrongful conduct in the future, the Health Care provider and the Class

24

members are left uncertain as to whether they are authorized under Section 627.736(5)(a)4 to charge their insured patients for the balances of the medical bills that the Insurance Company does not pay, and/or whether they are prohibited by Section 817.234(7)(a) to not charge the insured patients for the unpaid balances.

(c)     Absent injunctive relief requiring the Insurance Company to cease and desist from such wrongful conduct in the future, the Health Care provider and the Class members are left in the untenable position of having to address the Insurance Company's past, present, continuing, and ongoing wrongs with a multiplicity of lawsuits, in the various different county courts across the State of Florida, with the risk of suffering inconsistent and varying results.

(d)     The Insurance Company's continuing and ongoing unlawful conduct places its own PIP insureds at risk that Class members will refuse to treat them without receiving full payment in advance of receiving medical services needed to properly treat and/or diagnose their health condition, and this will lead to incalculable or unascertainable losses to third parties.

86.     The Health Care Provider and the Class members have a clear legal right to seek an injunction requiring that the Insurance Company cease and desist in the future from unlawfully extending the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment obligation.

87.     The Health Care Provider and the Class members have no other adequate remedy at law.

88.     The injunctive relief requested by the Health Care Provider and the Class members would not be contrary to the interest of the public generally.

89.     The Health Care Provider has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

## Count III – Breach of Contract

90.     This is a common law action for breach of contract brought by the Health Care Provider and the Class against the Insurance Company.  Alternatively, in the event that class certification is unavailable, this count is brought by the Health Care Provider against the Insurance Company.

91.     The Health Care Provider realleges and incorporates by reference paragraphs 1-60 and 62-63 above.

92.     Section 627.736(10), Florida Statutes establishes a condition precedent which requires a plaintiff to submit to the PIP insurer a pre-suit demand letter prior "to filing any action for benefits under this section…."  Because this is an action seeking damages caused by the Insurance Company's breach of its agreement to be responsible for unlawful reductions of the insured patient's coinsurance or co-payment obligation and is not an action for PIP benefits under Section 627.736, the pre-suit demand letter requirement of Section 627.736(10) does not apply.

93.     The Insurance Company unlawfully extended the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment obligation.

94.     Pursuant to the Class definition set forth herein, none of Class members' bills were denied or reduced for any reason other than the Insurance Company's application of the Fee Schedule Method reductions to the portion of a medical bill that applies only to the insured patient's 20% coinsurance or co-payment obligation.

95.     After applying unlawful reductions to the portion of the medical bills that applied only to the insured patient's 20% coinsurance or co-payment obligation, the Insurance Company failed or refused to pay for those unlawful reductions, in breach of the portion of the Insurance Policy which states:

> The insured person shall not be responsible for payment of any reductions applied by us. If a medical provider disputes an amount paid by us, *we will be responsible* for resolving such dispute.  . . .

Exhibit A, at p. 18 of 51 (emph. added).

96.     As a direct and proximate result of the Insurance Company's unlawful reductions of insured patients' medical bill and the Insurance Company's refusal or failure to accept responsibility for those unlawful reductions, the Health Care Provider and the Class members have incurred damages in the amount of the unlawful reductions imposed by the Insurance Company.

97.     The Health Care Provider has retained the undersigned counsel to prosecute this action and is entitled to the recovery of its reasonable attorneys' fees and costs pursuant to Section 627.428, Florida Statutes.

## PRAYER FOR RELIEF

**WHEREFORE,** the Health Care Provider respectfully requests this Honorable Court to award the following relief against the Insurance Company:

a.     Issue an order certifying that Counts I, II and/or III, and/or particular issues raised therein are properly maintainable as a class action under Rule 23(b)(2), (b)(3), and/or (c)(4).

b.     Issue an order appointing the Health Care Provider as the Class Representative.

c.     Issue an order appointing the undersigned law firms as class counsel.

d.     Issue an order granting a declaratory judgment under Count I, declaring the parties' respective rights and obligations under Section 627.736(5)(a)1 and 4, any other applicable law, and the Insurance Policy.

e.      Issue an order granting a temporary and/or permanent injunction under Count II requiring the Insurance Company to cease and desist in the future from continuing to unlawfully extend the Fee Schedule Method reductions to the portion of a medical bill that applies to the insured patient's 20% coinsurance or co-payment.

f.      Issue a judgment for damages against the Insurance Company and in favor of the Health Care Provider and/or the Class under Count III, together with interest.

g.      Issue an order requiring the Insurance Company to pay the Health Care Provider's reasonable attorneys' fees and costs pursuant to Sections 627.428.

h.      Grant such other relief as this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

The Health Care Provider, on all on behalf of itself and all others similarly situated who may join this action, hereby demands a trial by jury on all the issues so triable.

**[Attorney's signature appears on the following page.]**

Respectfully submitted,

*/s/ J. Daniel Clark*
J. Daniel Clark, FBN 0106471
dclark@clarkmartino.com
CLARK ♦ MARTINO, P.A.
3407 W. Kennedy Blvd.
Tampa, FL  33609
Telephone: (813) 879-0700
Facsimile: (813) 879-5498

David M. Caldevilla, FBN 654248
dcaldevilla@dgfirm.com
de la PARTE & GILBERT, P.A.
P.O. Box 2350
Tampa, FL  33601-2350
Telephone: (813) 229-2775
Facsimile: (813) 229-2712

Matthew A. Crist, FBN 0035539
cristm@cristlegal.com
CRIST LEGAL | PA
606 East Madison Street
Tampa, FL  33602
Telephone: (813) 575-5200
Facsimile: (813) 575-2520

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** on September 20, 2019, I electronically filed the foregoing with the Clerk of Court by using this Court's CM/ECF system that will send a notice of electronic filing to all counsel of record.

*/s/ J. Daniel Clark*
J. Daniel Clark